# MAY, 1913.

### JIM ROBERTS v. THE STATE.

No. 2264. Decided April 2, 1913.

Rehearing denied May 7, 1913.

1.—Murder—Charge of Court—Murder in the Second Degree—Implied Malice—Unlawful Killing.

Implied malice may exist, or will be the subject of implication or conclusion where murder in the first degree is not shown to exist, and where the facts do not mitigate, excuse, extenuate or justify the homicide, that is, where manslaughter, negligent homicide, and self-defense are not part and parcel of the evidence or of the case, and it is not a correct proposition that murder in the second degree will be implied from the fact of an unlawful killing.

2.—Same—Case Stated—Charge of Court—Implied Malice.

Where the court charged that if the jury believed from the evidence beyond a reasonable doubt that on or about the time charged in the indictment, with his implied malice aforethought, with a deadly weapon, etc., with intent to kill, and not in self-defense, did shoot and thereby kill the deceased, to find defendant guilty of murder in the second degree, the same was reversible error.

3.—Same—Evidence—Condition of Wound—Rule Stated.

While it may be correct as a general rule that the exit of the ball making the wound is larger than its entrance, yet this does not seem to be the invariable rule, but where the wound made by the supposed exit of the ball has been tampered with and enlarged by that means, then opinion testimony as to where the ball entered the body of the deceased should not be admitted.

4.—Same—Case Stated—Entry of Bullets.

Where the record showed that a day's time had elapsed between the killing and the examination of the wound of deceased by a physician with reference to the entry of the bullets, and it was not shown that the wounds were in the same condition at the time of such examination as when they were inflicted, but that cotton had been stuffed in them which had changed their condition and enlarged the same so that they appeared larger in front than in the back of the body of deceased, testimony of the expert that these wounds indicated that the bullets entered from the rear of the body was inadmissible.

5.—Same—Evidence—Other Transactions.

Upon trial of murder, it was reversible error to permit the State on cross-examination of the defendant to elicit from him that there were quite a number of Mexicans and negroes in his section of the country the year before the homi-

cide and that there was a good deal of gambling going on in that neighborhood at that time.

### 6.—Same—Evidence—Contradicting Witness—Rule Stated.

Where a witness did not state at a former trial or on former occasions the same fact that he states at the pending trial, it is not a contradiction, where there is no inconsistency between his statements on the two occasions, or when his attention is not called on the prior occasion to the new matter about which he speaks at the pending one. Following Hyden v. State, 31 Texas Crim. Rep., 401, and other cases.

### 7.—Same—Case Stated—Evidence—Threats.

Where, upon trial of murder, a witness for the defendant testified that the deceased had made threats against the life of the defendant which he, the witness, had communicated to the defendant, it was error to permit the State, on cross-examination, to show that this witness on a former occasion had not mentioned such threats without showing that the matter was called to witness' attention. Following Lewis v. State, 15 Texas Crim. App., 647.

### 8.—Same—Newly Discovered Evidence—Continuance.

Where the judgment is reversed and the cause remanded upon other grounds, the question of refusing a continuance and a motion for new trial on newly discovered evidence, need not be considered.

### 9.—Same—Stating Facts in Opinion—Motion for Rehearing.

Where the motion for rehearing by the State attacked the opinion of this court for erroneously stating the facts with reference to the examination of the wounds of the deceased and the entry of the bullets, but the record bore out the statement of the court, there was no error.

### 10.—Same—Irrelevant Testimony.

Where, upon trial of murder, the State was permitted to introduce testimony that a great deal of gambling was going on among the negroes and Mexicans in the neighborhood where the homicide occurred a year prior thereto, this was not an immaterial matter, but was prejudicial to the rights of the defendant and inadmissible in evidence.

### 11.—Same—Statement of Facts in Opinion.

Where this court, in its opinion, incorrectly stated the facts with reference to the contradiction of defendant's witness, but the mistake was not of such character as to change the legal conclusion reached in the opinion, there was no error.

### 12.—Same—Murder in the Second Degree—Charge of Court—Implied Malice.

Where, upon trial of murder, the court in his charge correctly defined express and implied malice in defining the law of murder, but erroneously instructed the jury when he came to apply the law to the facts that malice would necessarily be implied from an unlawful killing, unless committed in self-defense, the same was reversible error. Following Best v. State, 58 Texas Crim. Rep., 327, and other cases.

Appeal from the District Court of Hill. Tried below before the Hon. C. M. Smithdeal.

Appeal from a conviction of murder in the second degree; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*Collins, Cummings & Shurtliff* and *Williams & Williams,* for appel-

lant.—On question of testimony of medical expert: Graves v. State, 58 Texas Crim. Rep., 42.

On question of contradicting witness: Mealer v. State, 32 Texas Crim. Rep., 102, and cases cited in opinion.

On question of court's charge on murder in the second degree and implied malice: Morgan v. State, 16 Texas Crim. App., 593; Ellison v. State, 12 id., 557; Turner v. State, 16 id., 378; Miles v. State, 18 id., 156; Turner v. State, 20 id., 56; Smith v. State, 19 id., 95; Best v. State, 58 Texas Crim. Rep., 327; Smith v. State, 57 Texas Crim. Rep., 585, 124 S. W. Rep., 679; Wheeler v. State, 56 Texas Crim. Rep., 547; Abbata v. State, 51 id., 510; McDowell v. State, 55 id., 596; Green v. State, 58 id., 428; Thomas v. State, 45 id., 111.

*C. E. Lane,* Assistant Attorney-General, and *Wear & Frazier,* for the State.

DAVIDSON, PRESIDING JUDGE.—The court submitted the case to the jury upon the issues of murder in the first degree, second degree, manslaughter and self-defense. The jury acquitted of murder in the first degree and convicted of murder in the second degree.

With reference to malice, among other things, the court gave this charge: "Malice is always a necessary ingredient of the offense of murder in the second degree. The distinguishing feature, however, so far as the element of malice is concerned is: That in murder in the first degree malice must be proved to the satisfaction of the jury beyond a reasonable doubt as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing." Applying the law to the case, the court thus instructed the jury: "Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, on or about the time charged in the indictment with his implied malice aforethought, with a pistol, said pistol being a deadly weapon or instrument reasonably calculated and likely to produce death in the mode and manner of its use, with the intent to kill, and not in self-defense did shoot and thereby kill the said Rufus C. Weiss, as charged in the indictment, you will find him guilty of murder in the second degree and assess his punishment at confinement in the penitentiary," etc. Objections were urged to both charges with reference to the matter of malice and the constituent elements under the charges as given as to murder in the second degree. It is not a correct proposition that murder in the second degree *will* be implied from the fact of an unlawful killing. It may be implied, but in order to constitute murder in the second degree, malice will not be implied as a matter of law from an unlawful killing. Implied malice may exist, or will be the subject of implication or conclusion where murder in the first degree is not shown to exist, and where the facts do not mitigate, excuse or extenuate or justify the homicide. Malice as a predicate for murder in the second degree

may be implied, and the jury might· be justified in arriving at the conclusion that the killing was upon implied malice, where manslaughter, negligent homicide and self-defense are not part and parcel of the evidence or of the case. Manslaughter is an unlawful killing; negligent homicide is also an unlawful killing, and under some circumstances accidental homicide may be an unlawful killing. Therefore, it is not correct to charge the jury that in murder in the second degree *malice will be implied* from the fact of an unlawful killing. Following this definition the court intensified this error by informing the jury that implied malice aforethought is where the killing occurred with an instrument reasonably calculated to produce death and does produce it in the manner and mode of its use when this killing is not done in self-defense. This, taken in connection with the previous charge of the court, that malice will be implied from an unlawful killing, would justify and authorize the jury to find the killing upon implied malice aforethought, even though the facts should show it was manslaughter, or any other inferior degree of a culpable killing. Under the definition given the jury was justified in convicting appellant of murder in the second degree upon implied malice if they should find that the killing was unlawful from any standpoint, and in the application of the law to the facts this matter is not correctly presented, but the jury is left to conclude that although the killing might have been manslaughter or otherwise unlawful, yet it would be implied malice because it was unlawful, this being intensified by the court only qualifying malice aforethought when the homicide was justified in self-defense. Appellant was given forty years in the penitentiary for murder in the second degree. What effect this may have had upon the jury is conjectural, but the verdict of the jury is nòt in any sense conjectural. This charge may have tended to enhance the punishment above the minimum of five · years. This error is of sufficient importance to require a reversal of this judgment.

Another question is suggested by a bill of exceptions, which recites, in substance, that while Dr. Mahaffy was testifying for the State, and after it had been developed that he had not seen the body of deceased until the next day after the homicide, and although there had been no evidence introduced that the condition of the wounds in the deceased's body was the same at the time said witness saw same as they were shortly after they were inflicted, the witness was permitted to testify, in substance, that the wounds indicated that the bullets entered from the rear. It is also recited in the bill, in this connection, that, inasmuch as a day's time had elapsed between the killing and the examination of the deceased by the witness, and that the witness had no evidence that the wounds were in the same condition at the time of the examination as when inflicted, and further that it had been shown and would be more fully shown during the trial, that cotton had been stuffed in the wounds, which had changed their condition and which had enlarged the same so that the wounds in front appeared larger than the wounds in

the back of the body. This bill does not present the matter as clearly from the facts as should have been. If the wounds had been enlarged in front by treatment of any sort, either by insertion of cotton or by a surgical operation, we are inclined to hold that the testimony of Dr. Mahaffy, so far as this phase of the case is concerned, would not be permissible. If wounds have been in any way tampered with before the expert or other witness undertakes to testify as to the condition of the wound, then it would be improper for the witness to testify or give his opinion as to whether the shots entered from the front or rear. It is permissible to elicit evidence that the ball entered from the rear and passed out in front, or in front and passed out at the rear, but this would not be so where after the infliction of the wound and before the witness undertakes to describe it, said wound had been tampered with as to change its original appearance or condition. It seems to be generally thought, and stated as a general rule, that the exit of the wound is larger than its entrance, yet this does not seem to be the invariable rule, but where the wound made by the supposed exit of the ball has been tampered with and enlarged by that means, then such testimony ought not to be permitted to go to the jury.

Another bill recites that while appellant was testifying in his own behalf on cross-examination, the county attorney was permitted to elicit from him that there were quite a number of Mexicans and negroes in his section of the country during the fall of 1911, the year before the homicide, and that there was a good deal of gambling going on in that neighborhood at that time. It would not be relevant testimony, that a year prior to this homicide there had been a good deal of gambling in that country among negroes and Mexicans. This may have been and doubtless was prejudicial to appellant's case before the jury. He ought not to have been held responsible in this homicide case for such gambling transactions among negroes and Mexicans.

Another bill recites that Edgar Johnson testified for the defendant, among other things, that the deceased had made threats against the life of defendant, which he, witness, had communicated to the defendant. While this witness was on the stand the county attorney asked him if while talking to the witness Frazier and other counsel on the night previous to his testifying, he had told either of those gentlemen about any threats which he had heard deceased make concerning the defendant. Various objections were urged, but they were overruled, and the witness was required to testify that on the previous night the county attorney had talked with him and during that conversation said Johnson had not informed him and the other counsel about any threats he had heard deceased make concerning defendant. This testimony was illegal and improperly admitted. In the case of Hyden v. State, 31 Texas Crim. Rep., 401, this question was before the court, and it was held that where a witness did not state at a former trial or on former occasions the same fact that he states at the pending trial, it is not a contradiction when there is no inconsistency between his statements on the two occa-

sions, or when his attention was not called on the prior occasion to the new matter about which he speaks at the pending one. In support of this cases were cited, among others, Lewis v. State, 15 Texas Crim. App., 647. In order to contradict a witness in regard to this matter, it should or ought to be shown in some way that the matter was called to his attention. The mere fact that the witness fails to tell everything connected with a matter about which he testifies at the pending trial does not afford grounds for impeachment unless brought within the rules above announced. A mere failure to state all of the facts is not necessarily a contradiction. As was said in the Hyden case, supra: "The strongest light in which the matter can be regarded in favor of the prosecution is that Mrs. Hyden omitted to state on the examining trial the facts inquired about in the predicate laid for her impeachment. Her testimony on the final trial and the evidence omitted on the examining trial are entirely harmonious, and are in no way contradictory. On the examining trial she was not questioned with reference to the evidence inquired about in relation to which she was sought to be impeached on the final trial. Had she, on such examining trial, been interrogated in relation thereto, and failed or refused to testify in regard to it, or had then denied it, or had been cautioned to tell all she knew in reference to the matters then under investigation, and had failed or refused to do so, the impeachment would have been permissible. But, on the other hand, if she had on such examining trial testified as she did on the final trial, and at the time of the proposed impeachment, or if she had not on such examining trial been interrogated in reference to that matter, and had not been requested specially to state all the facts within her knowledge touching such matters, she could not be so impeached." The Hyden case lays down the correct rule, and has not been questioned by any subsequent decision in this State. In fact, it seems to have been followed wherever the question has been before the court. The rule is a correct one, whether it had ever been decided or not.

There are some other matters presented for revision, among them the refusal to continue the case and newly discovered evidence. These questions involve quite a lengthy part of the record, but as they will not arise upon another trial as here presented, we deem it unnecessary to to discuss them.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

ON REHEARING.

May 7, 1913.

DAVIDSON, Presiding Judge.—At a former day of the term the judgment herein was reversed. Messrs. Wear & Frazier, counsel for private prosecution for the State, have filed a motion for rehearing attacking the opinion of the court in several respects.

It is contended the court was wrong in holding that the testimony of Dr. Mahaffey was objectionable; among other things, it is stated the bill of exceptions does not show, at the time the objection was made, any evidence had been offered in reference to a change in the condition of the wound by cotton having been stuffed into it, etc. The bill is as follows: "While the witness, Dr. H. A. Mahaffey, was upon the witness stand as a witness for the State, and after it had been developed that he had not seen the body of the deceased until the next day after the homicide, and although there had been no evidence introduced that the condition of the wounds in the deceased's body was the same at the time said witness saw same as they were shortly after they were inflicted, the said Dr. H. A. Mahaffey was permitted to testify as follows," etc. After setting out his testimony in the bill in regard to the matter, the bill further recites that "appellant objected to the questions and answers so made by the said witness, as above set forth, on the ground that it had been developed that a day's time had elapsed between the killing and the examination of the deceased by the said witness, and said witness had no proof that said wounds were in the same condition at the time of such examination as they were when inflicted, and on the further ground that it had been shown and would be shown, and it was thereafter testified that the condition of said wounds had been changed, that is, that cotton had been stuffed in his wound and had changed the condition of the same and had enlarged the same, and the said witness based his opinion in part upon the fact that the wounds in front appeared larger to him than the wounds in the back of said body, and that an opinion based upon such condition was immaterial and prejudicial," etc. We are of opinion that this bill of exceptions does show and recite, as a matter of fact, that Dr. Mahaffey had not seen the body of the deceased until the day after the homicide, and it does recite there had been no evidence introduced that the condition of the wound on the body of the deceased was the same at the time witness saw it as it was shortly after the wound was inflicted, and it does recite as a fact, that it was testified that the condition of the wound had been changed, that is, that cotton had been stuffed in the wound and had changed the condition of it and enlarged it, etc. We quote the record to show the real condition of the bill of exceptions. We are of opinion this sufficiently presents this question, and if upon another trial the matter is again thus presented, that part of Dr. Mahaffey's testimony with reference to his opinion based on the condition of the wounds as set forth in the bill should not be permitted to go to the jury. Experiments, as originally stated, are permissible, but the experiment must indicate the condition of the things at the time the experiment is made as conformable to the conditions at the time the thing happened about which the experiment is made.

It is contended the court's opinion was wrong in holding the trial court erred in permitting testimony in regard to the fact that there was a considerable amount of gambling in appellant's neighborhood among

the negroes and Mexicans a year before this homicide. It is further claimed in the motion if the testimony is not admissible, that "it was a matter so utterly immaterial, towit: that there were Mexicans and negroes in the country that it could not prejudice or in any way affect appellant's rights." The evidence introduced over objection was that there was a great deal of gambling going on among the negroes and Mexicans in that country a year before the homicide. What appellant had to do with this, or why it should have been introduced against him we do not understand. If it was utterly immaterial as contended by counsel, then it may be asked why was it introduced? It was put in for some purpose, and unless appellant was in some way connected with it or it entered into his action with reference to this homicide, if immaterial so far as he was concerned, it was prejudicial; at least, it was intended to operate in some way against him else the State would not have put it before the jury. It was prejudicial. Lawlessness is not immaterial when urged against an accused. It does affect him adversely.

Another question is suggested in which it is contended the court was wrong in reference to the evidence of the witness Frazier. It is true that the opinion does not state the matter exactly as it should have been stated, for upon reading the opinion it seems there was some confusion as to which witness testified to certain facts, whether it was Johnson or Frazier. To remedy this matter and put it as the bill of exceptions shows, the following will be noted from the bill: "A. M. Frazier, county attorney, while on the witness stand, as a witness for the State, was asked, 'If Edgar Johnson, a witness who had testified for defendant, while talking to the witness Frazier, Judge W. C. Morrow and Judge W. C. Wear, on the previous night, had told either of them anything about any threat that he had heard the deceased make concerning the defendant?' Be it further remembered that the witness Edgar Johnson, a witness who had testified for the defendant, testified that deceased had made threats against the life of defendant, and that he had communicated same to the defendant; that thereupon counsel for defendant objected to said question propounded to the witness Frazier, and the answer sought to be elicited thereby, on the ground that no predicate was laid for that character of impeachment and that said testimony was hearsay, irrelevant and immaterial, which objections were overruled by the court and the witness was permitted to testify and did testify that the witness Edgar Johnson, on the previous night, while talking to said parties, had not told them a word about any threat he had heard the deceased make concerning the defendant." Without taking up the exceptions, etc., and going further into this matter, this statement is simply made to correct the original opinion as it does not show clearly how the matter occurred. What we said before we adhere to in regard to this matter, so far as the legal conclusion is concerned. If it is sought to contradict Johnson by Frazier, it was necessary that the matter be called to Johnson's attention, under the rule in the Hyden case, 31 Texas Crim. Rep., 401. That decision lays down the correct rule.

This is noticed simply to make the original opinion conform more correctly to the bill of exceptions, and state the matter exactly as it occurred, and to remove any doubt as to the position of the two witnesses, Frazier and Johnson, in their testimony.

Another contention in the motion is that the opinion reversing the judgment is erroneous in holding the charge of the court on murder in the second degree deficient. We again repeat the criticised charge, as follows: "Malice is always a necessary ingredient of the offense of murder in the second degree. The distinguished feature, however, so far as the element of malice is concerned is: That in murder in the first degree malice must be proved to the satisfaction of the jury beyond a reasonable doubt as an existing fact, while in murder in the second degree, malice will be implied from the fact of an unlawful killing." This is not the law. Malice *will not be necessarily implied from an unlawful killing.* Manslaughter is an unlawful killing, and an intentional one, yet malice is not implied. Negligent homicide is an unlawful killing but malice is not implied. Murder in the second degree has been frequently defined, and it is unnecessary to review the authorities. While it is true in another portion of the charge the court drew the distinction between murder in the first and second degree, and, among other things, stated that express malice constituting murder in the first degree must be proved, and where the facts do not show mitigation or extenuation or justification, a homicide will be murder in the second degree. But when the court comes to apply the law to the case and instruct the jury as to their guidance upon this subject, the charge uses the following language: "Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, on or about the time charged in the indictment with his implied malice aforethought, with a pistol, said pistol being a deadly weapon or instrument reasonably calculated and likely to produce death in the mode and manner of its use, with the intent to kill, and not in self-defense did shoot and thereby kill the said Rufus C. Weiss, as charged in the indictment, you will find him guilty of murder in the second degree," etc. Looking at the definition in the fact of this application of the law, this charge is not sufficient. The court had charged the jury that malice necessary to constitute murder in the second degree *will be implied from an unlawful killing.* In another portion of the charge drawing or seeking to draw the distinction between the two degrees of murder, the court informed the jury that murder in the second degree would be constituted where there were no mitigating or extenuating circumstances or justification. Now applying the law he leaves the matter before the jury that a killing under any circumstances except in justification or self-defense would constitute murder in the second degree. The charge would have been in much better condition, where the law is applied to the case, had the court left off the expression "and not self-defense" did shoot, etc. Having given this part of

the charge, the jury should also have been instructed with reference to the other matters that might reduce the killing below murder in the second degree. The court having instructed the jury that malice aforethought, under the foregoing instructions, applied of necessity to the definitions given, would include manslaughter in his idea of malice aforethought. This is emphasized by the exception in the application of the law to the case wherein the jury was instructed that if he killed in self-defense it would not be murder in the second degree. But it leaves the jury to conclude that if he killed under any other circumstances than self-defense under the foregoing instructions he would be guilty of murder in the second degree. Manslaughter is not included in the foregoing definition, but was in fact in the case. Now, if defendant killed under circumstances which would constitute manslaughter, it would not be murder in the second degree, and could not be malice aforethought. The court having charged the jury that malice will be implied from the fact of an unlawful killing, and then in applying the law to the case told them that under the foregoing instructions if he killed that it would be upon malice aforethought unless he killed in self-defense. Having submitted this matter in this manner to the jury, it was evidently erroneous. We refer to the Best case, wherein Judge Ramsey laid down the correct and proper form. It is unnecessary here to quote from that opinion. See Best v. State, 58 Texas Crim. Rep., 327. This matter was so thoroughly elucidated by Judge Hurt in Miles v. State, 18 Texas Crim. App., 156, it is deemed unnecessary to discuss that question further. Judge Hurt, in his usual, able and exhaustive manner, reviewed this question in that case. The writer does not care to add or try to add to or supplement his reasoning; in fact, it is seldom the case when Judge Hurt had given careful attention to a proposition and wrote upon it, that it would need further illustration or discussion. See also Branch's Crim. Law, sec. 426, and cases as well cited in Branch's Crim. Law, sec. 428. It has been held so often it is unnecessary to repeat it, that a charge is error which authorizes a conviction for murder in the second degree on a state of facts which would constitute only manslaughter. Miles v. State, supra, and Ray v. State, 46 Texas Crim. Rep., 511. Again it is said, stating the circumstances, the absence of which authorizes the inference of implied malice, a charge should not ignore circumstances which mitigate or extenuate a homicide. Ellison v. State, 12 Texas Crim. App., 557; Neyland v. State, 13 Texas Crim. App., 536; Turner v. State, 16 Texas Crim. App., 378; Wheeler v. State, 56 Texas Crim. Rep., 547.

A review of these cases convinces us that appellant was correct and is entitled to a reversal of his judgment, and there is no substantial reason set out in the motion for rehearing why the former opinion should be set aside or the judgment affirmed.

The motion for rehearing is therefore overruled.

*Overruled.*